IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERICA GARLAND, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| ABC DAYCARE & LEARNING ) | |
| CENTERS, INC., d/b/a ABC DAYCARE ) | **JURY TRIAL DEMANDED** |
| & LEARNING CENTER, ) | |
| a Missouri corporation, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW Plaintiff Erica Garland ("Plaintiff"), by and through his undersigned counsel, and for her Complaint against Defendant ABC Daycare & Learning Centers, Inc., d/b/a ABC Daycare & Learning Center ("Defendant"), states the following:

### Introduction

1. This Complaint is based on an incident occurring between January 25, 2012 and March 14, 2012 at the ABC Daycare & Learning Center located in Wentzville, Missouri wherein Plaintiff, an individual with disabilities, was unlawfully terminated from her job because of her disability.

### Parties

2. Plaintiff is and was, at all relevant times herein, a resident of the State of Missouri.

3. Defendant ABC Daycare & Learning Centers, Inc. is a Missouri corporation organized and existing under the laws of the State of Missouri, with many business locations, but with its principal place of business located at 499 Rosslare Drive, St. Charles, Missouri 63304.

1

Defendant is a service organization providing daycare and learning for children between ages six weeks to six years of age. Defendant acted through the actions of its agents, Ms. Patti Schneller, supervisor and Ms. Lisa Galli, Director and owner of Defendant.

### Jurisdiction and Venue

4. This action arises under the laws of the United States, including Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12112 and the ADA Amendments Act of 2008 ("ADAAA"). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.

5. Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b)(2), because all of the events or omissions giving rise to this claim occurred in the Eastern District of Missouri.

### Jurisdictional Prerequisites

6. On or about October 30, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), detailing the allegations included herein.

7. On or about July 30, 2015, the EEOC issued Plaintiff a Notice of Right to Sue. Accordingly, Plaintiff has fully complied with all jurisdictional prerequisites to bring this action. A true and correct copy of the Plaintiff's Notice of Right to Sue is attached hereto and incorporated by reference as *Exhibit A*.

### Factual Allegations

8. Plaintiff was employed by Defendant July 2011 to March 15, 2012.

9. Plaintiff worked for Defendant at the 1652 West Meyer Road, Wentzville, Missouri 63385 location during all times of these allegations.

10. Defendant is an employer and a covered entity as defined in 42 U.S.C. §12111(2) and (5).

11. On or about January 25, 2012, Plaintiff was diagnosed with Stage 2 invasive malignant breast cancer. At the time of the alleged occurrence, Plaintiff's diagnosis of breast cancer did not affect her major life activities, but she was regarded as disabled by Defendant informing them of her breast cancer diagnosis. Accordingly, Plaintiff is a qualified individual with disability under the Americans with Disabilities Act.

12. Plaintiff informed Defendant on or about January 26, 2012 that her doctor diagnosed her with stage 2 malignant breast cancer.

13. Defendant at first was accommodating of Plaintiff by allowing her time off for doctor's appointments regarding her diagnosis of stage 2 invasive malignant breast cancer.

14. On or about February 3, 2012, Plaintiff had met with her oncologist and he recommended that she undergo chemotherapy treatment. When Plaintiff asked her oncologist about being able to work, her doctor replied that she would be able to work and that he believed it would be good for her to continue her work to keep her mind off of the cancer.

15. Upon returning from her oncologist appointment, Plaintiff informed her supervisor Ms. Patti Schneller ("Schneller") that she would need to leave early on the days when she had chemotherapy.

16. Schneller told Plaintiff that it should not be a problem, but she would have to check with the owner, Ms. Lisa Galli ("Galli"), to be sure.

17. From February 6, 2012 to March 2012, Plaintiff was subjected to and/or overheard comments by Schneller and Galli about her inability to continuing working safely because of her breast cancer diagnosis. Comments included, but were not limited to:

3

    (a)    "Are you going to be able to work safely?"

    (b)    "Are you going to keep working?"

    (c)    "I don't want you to hurt yourself."

    (d)    "You need someone in the room with you."

    (e)    "She's not going to be able to come back for months."

    (f)    "Have her file for unemployment."

    (g)    "It would be better if she just quit."

    (h)    "She's a liability."

    (i)    "Lisa's not going to let you work because she thinks you're a liability."

    (j)    "She's going to get the kids sick."

    (k)    "She's going to scare the kids."

    (l)    "Probably better if you just wouldn't work here anymore."

18. Although Plaintiff's doctor allowed her to work without restrictions, after Plaintiff received her chemotherapy port placement Schneller insisted on having another worker in the room with Plaintiff as she worked at all times.

19. Plaintiff had her first chemotherapy treatment on or about March 15, 2012 and was able to come into work that day.

20. At the end of her work shift on March 15, 2012, Plaintiff was informed during a meeting with Schneller and the Assistant Director of Defendant that the owner, Galli was worried that her breast cancer chemotherapy treatment might cause her to get sick, get the kids sick and it would be better if you [Plaintiff] wouldn't work at the daycare anymore. Schneller told Plaintiff that Galli did not feel comfortable with Plaintiff working at the daycare while I was undergoing chemo because Plaintiff was a "liability."

4

21. Plaintiff was terminated from her employment with Defendant on or about March 15, 2012.

22. Defendant engaged in discriminatory practices described herein with malice, deliberate, and/or reckless indifference to Plaintiff's rights.

## COUNT I
## Discrimination in Violation of the ADA and ADAAA

23. Plaintiff incorporates by reference all preceding paragraphs as if fully stated herein.

24. Plaintiff was qualified to continue working as a teacher with Defendant when she was diagnosed with breast cancer.

25. Plaintiff was regarded by Defendant as being disabled and thus falls under the definition of disabled under the ADA.

26. The alleged treatment of Plaintiff by Defendants did not occur until after Plaintiff informed Defendant that she was diagnosed with breast cancer.

27. Defendant, through its agents Galli and Schneller continually questioned Plaintiff for having breast cancer and treated her less favorably following her diagnosis.

28. Defendant treated Plaintiff as a liability after she informed Schneller of her chemotherapy appointments related to the treatment of her breast cancer.

29. Defendant ignored Plaintiff's doctor's work release and treated Plaintiff as a safety risk for Defendant's employees, students and parents of students.

30. Defendant had no basis for believing that Plaintiff would become a safety risk to Defendant's employees, students and/or parents of students.

31. Defendant subjected Plaintiff to this discriminatory because of her disability, even though she was able and willing to perform her job.

5

32. Defendant's perception of Plaintiff's cancer diagnosis, as well as the effect of Defendant's attitudes toward, and assumptions about Plaintiff's abilities is based on speculation, stereotype, or myth regarding the abilities of persons diagnosed with cancer.

33. Defendant discriminated against Plaintiff by terminating her employment because of her disability.

34. As a direct and proximate result of Defendant's acts, Plaintiff has sustained damages, including but not limited to, lost wages and benefits, future wages, impairment of quality of life, emotional distress, diminished employment status, pain and suffering, humiliation, and deprivation of civil rights.

35. Plaintiff has been injured and aggrieved by, and will continue to be injured and aggrieved by Defendant's discrimination.

36. Defendant's actions were intentional, willful, knowing, wanton and malicious, and with flagrant disregard and deliberate indifference for the rights of Plaintiff, and entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and thereafter:

(a) Order Defendant to make Plaintiff whole for the harm caused, including compensatory damages and damages for emotional distress, humiliation, and diminished employment status;

(b) Award punitive damages to punish and deter Defendant and others from like conduct;

(c) Award costs and expense of litigation and a reasonable sum as and for attorneys' fees; and

(d) Such other and further equitable and legal relief as this Court deems just and proper.

## Demand for Jury Trial

Plaintiff requests a trial by jury on all issues in this case which are so triable.

Respectfully submitted,

/s/Cyrus Dashtaki
Cyrus Dashtaki, # 57606MO
Dashtaki Law Firm, LLC
5205 Hampton Avenue
St. Louis, MO 63109
Telephone:    (314) 932-7671
Facsimile:     (314) 932-7672
cyrus@dashtaki.com

Melvin D. Kennedy, #40430MO
Law Office of Melvin D. Kennedy, LLC
2001 S. Big Bend Blvd.
St. Louis, MO 63117
Telephone:  (314) 561-3241
Facsimile:  (314) 644-4303
Email:  Melvin.KennedyLLC@gmail.com

*Attorneys for Plaintiff Erica Garland*